## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**BEVERLY YESHION ROETTER,**

    **Plaintiff,**                         **CASE NO.**

**v.**

**FLORIDA HOSPITAL PHYSICIAN
GROUP, INC. d/b/a ADVENTHEALTH
EXPRESS CARE AT WALGREENS,**

    **Defendant.**

_____/

## COMPLAINT

Plaintiff, BEVERLY YESHION ROETTER, hereby sues Defendant, FLORIDA HOSPITAL PHYSICIAN GROUP, INC. d/b/a ADVENTHEALTH EXPRESS CARE AT WALGREENS and alleges:

## JURISDICTION

1.  This is an action brought under the Family and Medical Leave Act (FMLA) of 1993, codified at 29 U.S.C. §§2612, 2624.

2.  This is an action brought under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq. and under 42 U.S.C. §1981. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

3.     This is an action brought under the Americans with Disabilities Act (ADA), codified at 42 U.S.C. § 12101, et seq.

4.     This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes.

5.     Plaintiff was an employee of Defendant and brings this action for unpaid minimum wages and proper overtime compensation, liquidated damages, and all other applicable relief pursuant to Fla. Const. Art. X § 24, and the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) ("FLSA").

6.     The Court has concurrent jurisdiction over this subject matter pursuant to §250.01 et seq., Florida Statutes and concurrently has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.     This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

## THE PARTIES

8.     At all times pertinent hereto, Plaintiff, BEVERLY YESHION ROETTER, has been a resident of the State of Florida and employed by Defendant. Plaintiff is a member of a protected class for taking protected leave under the FMLA, for having a disability, for being Jewish, reporting FLSA violations, and has been retaliated against thereafter.

2

9.     At all times pertinent hereto, Defendant, FLORIDA HOSPITAL PHYSICIAN GROUP, INC. d/b/a ADVENTHEALTH EXPRESS CARE AT WALGREENS, has been organized and existing under the laws of the United States.  At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.  Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

10.     Plaintiff worked for Defendant for more than 1,250 hours in the year immediately preceding his need for leave and was employed with Defendant for more than one year.  Defendant employees more than 50 employees within a 75-mile radius.

11.     On April 9, 2020, Plaintiff dual filed a charge of discrimination with the EEOC and FCHR.  Plaintiff received a notice of right to sue from the EEOC on December 9, 2020. Thus, Plaintiff has satisfied all other conditions precedent to bringing this action by filing the instant complaint within 90 days of receiving a notice of right to sue letter from the EEOC.

## STATEMENT OF THE ULTIMATE FACTS

12.     Plaintiff began her employment with Defendant in or around 2007 but ten of those years the clinic was owned by Walgreens and then it was sold to Defendant on or around June 1, 2017; and at all times pertinent to this action, has

3

worked as an Advanced Registered Nurse Practitioner ("ARNP") Clinic Manager at Defendant's Walgreens' Take Care Health Clinic in Brandon, Florida.

13.     Plaintiff has been and continues to be subjected to disparate treatment, different terms and conditions of employment, and held to a different standard for taking protected leave under the FMLA, for holding different religious beliefs than Defendant, being diabetic and requesting accommodations and has been retaliated against thereafter.

14.     At the Take Care Clinic, Plaintiff acted as a Clinic Manager overseeing one to two clinics at a time.  At all relevant times, Plaintiff performed her duties in an exemplary fashion.

15.     Within one year of the Defendant purchasing the Walgreens Clinics, the Defendant eliminated the Clinic Manager positions and Plaintiff's position was changed to that as a Nurse Practitioner working in the Brandon Clinic.

16.     Plaintiff went from a salaried employee to an hourly employee making $53 per hour, not including differential pay.

17.     Plaintiff suffers from diabetes, a diagnosis that the Defendant was well informed of. In order to keep her blood sugar stable, Plaintiff had to eat on a regular scheduled basis so she could ensure that her insulin was regulated properly as well as have sufficient time to administer adjustments, as medically needed, to her insulin levels.

4

18.     Plaintiff uses an insulin pump in order to control her blood sugar levels. The pump delivers insulin on a regular basis and Plaintiff would program additional insulin prior to eating. When Walgreens operated the clinic where Plaintiff worked she was allowed to take thirty to forty-five minute lunches, but once the Defendant purchased the clinics Plaintiff was only allotted thirty minute lunches. Almost always Plaintiff did not even get to take her lunch breaks due to Defendant's scheduling practices and despite Plaintiff's complaints to Defendant regarding same.

19.     After the Defendant took over there was more pressure to see more and more patients within the same amount of working time.  Specifically, when Walgreens operated the clinic Plaintiff had approximately thirty minutes with each patient, but once the Defendant took over Plaintiff was initially allotted thirty minutes, but that time was quickly decreased to twenty minutes per patient.

20.     This time allotment was not feasible on a tight schedule due to patient acuity, intake and insurance input, billing work, computer issues and patients running late throughout the day, especially when the clinic was short staffed. Employee complaints from Plaintiff and other employees regarding this were widespread.

21.     As a result of this policy, Plaintiff's thirty minute lunch breaks were completely subsumed and overtaken because the clinic and its patients would be

running behind due to circumstances beyond Plaintiff's control.  Thus, on many days Plaintiff would not be able to take a lunch break at all or would have to take an extremely quick break while not being able to take care of her diabetic needs. Notably, the Brandon clinic is also one of the three busiest clinics owned by the Defendant.

22.    As a result of not being able to take lunches and having sufficient time to properly balance her blood sugar levels, Plaintiff began having dangerous and constant hypoglycemic reactions. Plaintiff did make these occurrences known to her managers and her colleagues.  Furthermore, it was also a frequent occurrence that Plaintiff's day would last longer than what was scheduled due to the clinic and its patients running behind.  More specifically, Plaintiff's Patient Care Assistant would leave at 5:30 p.m., but Plaintiff would still have four or five patients to see without assistance, so Plaintiff would work longer days than she was scheduled frequently on an off-the-clock basis.

23.    Prior to the Defendant purchasing the clinic, Plaintiff seldom had issues seeing all of the patients within a scheduled day, but even when she would run late, there was little said because she was salaried, so overtime was not an issue.

24.    Once her position became hourly, the Defendant gave Plaintiff one verbal warning, after she saw her last patient at around 6:30, but did not clock-out

until 7:30 due to having to handle administrative tasks and other issues at the clinic before clocking-out.  Plaintiff explained this to the Defendant and her manager, but Plaintiff was still reprimanded.

25.    Defendant also added additional duties and required questions to be asked of every patient by the Nurse Practitioners. The questions mainly had to do with what the Defendant called "spiritual counseling."  Plaintiff would have to ask each patient whether they had any "religious beliefs would affect their medical care?" or whether they had a "sense of peace and happiness in their life, or someone that loved them?"  If the patient would answer "no," then Plaintiff would have to put in an order for spiritual counseling and Defendant would call the patient afterwards and ask the patients religious questions and ask to "connect" with the patients.

26.    Plaintiff practices the Jewish faith and Defendant is a known Seventh-Day Adventist organization.  The required questions did not begin until Defendant purchased the Walgreen's clinics where Plaintiff worked.  This was not an issue until Plaintiff's bonus metric began to be tied to her getting patients to sign up for the "spiritual counseling" the Defendant was trying to get patients to do despite the fact that Plaintiff voiced her objections to such religious/faith based practices.

27.    The spiritual counseling representatives would also frequently visit the clinic to train Plaintiff.   It was an extremely uncomfortable and hostile

7

environment for Plaintiff because they would ask all of the employees at the clinic to join them in prayer in the name of Jesus.  Before all of the trainings and meetings held by the spiritual representatives there would be prayers in the name of Jesus in a group setting where Plaintiff felt obligated to join in fear of her being singled out for her religious beliefs (Jewish) and that if Plaintiff didn't participate it would affect her employment with the Defendant.

28.    In addition to having to being forced to pray in a group setting about something which she does not believe in, Plaintiff was also denied time off for Passover and other sacred Jewish holidays by the Defendant.  Again, prior to the Defendant purchasing the clinic where Plaintiff worked, Plaintiff's religious holiday requests were always honored, but after the Defendant took over, all such requests were denied.

29.    Defendant would always accommodate all Sabbath requests for Seventh Day Adventists who do not work from Friday night until Saturday night. In fact, in her employment agreement with the Defendant, Plaintiff's agreement asked that she respect the fact that members of the Defendant observed the Sabbath, but yet Plaintiff's requests for time off to observe a few Jewish holidays each year were not accommodated or granted.  When Plaintiff appealed the decision not to accommodate her religious holiday to Human Resources ("HR"), she was told by HR that the Defendant was "not obligated to give you (Plaintiff)

8

the day." This is a clear instance of preferential and negative disparate treatment based on Plaintiff's religious beliefs.

30.    Notwithstanding the above, in early 2019, Plaintiff put in for an accommodation under the ADA to protect her right to take a lunch so that she could avoid having hypoglycemic reactions at the frequency that they were occurring. Despite Plaintiff's request to ensure she would have patients scheduled just in a slightly different manner in the afternoon, the Defendant never truly honored Plaintiff's request and Plaintiff continued having hypoglycemic reactions on a very frequent basis which was having serious adverse health consequences to her.

31.    Specifically, her requests for dedicated lunch times were flat out denied and ignored twice by her Manager Suzanne DesRosier between February and May of 2019. Plaintiff reported the lack of accommodation to the Director of Clinical Operations, Brandy Medhurst and the Assistant Director of Clinical Operations, Charlotte Vozdecky during the group's monthly conference calls, but nothing was done to remedy or accommodate Plaintiff. Instead, Plaintiff was told that it was her "responsibility to take care of herself."

32.    As a result of Defendant's lack of accommodation and directive for Plaintiff to "take care of herself," Plaintiff was left with no other option, but to occasionally start blocking off a patient slot right after her lunch started so Plaintiff

would have enough time to regulate her blood sugar and eat a proper diet per her physician's instructions.

33.     Everyone in the clinic was aware that the Defendant was not accommodating Plaintiff and that Plaintiff was being forced to ingest glucose tablets and consume sugary sodas so that she could continue seeing all of the patients scheduled during the time reserved for Plaintiff's lunch break.

34.     In May of 2019, Plaintiff went on vacation. During her vacation Plaintiff experienced health issues which were a direct result of months of frequent hypoglycemic reactions.  Accordingly, Plaintiff requested FMLA leave which was granted.

35.     Plaintiff returned to work from FMLA leave on July 16, 2019, and was terminated, after seeing a few patients, for allegedly "placeholding" and rescheduling patients to protect her ability to take a lunch break to service her diabetic needs.

36.     Plaintiff explained that everyone (even those without a medical need) do this all the time, but yet she was the only one being terminated for same. This was, of course, only after Defendant told Plaintiff to "take care of herself" and denied her accommodation requests based on her diabetic needs.

37.     The Defendant's Human Resources department responded by stating they were aware of others doing it as well and were looking into.

10

38.     Plaintiff, after requesting an ADA accommodation and after taking an FMLA leave of absence because Defendant refused to accommodate Plaintiff, was the only one terminated for moving patients around so Plaintiff could have enough time to take a lunch to properly regulate her blood sugar.

39.     In addition to this hostile, discriminatory and retaliatory working environment, Plaintiff was also disciplined whenever she would work through her lunch and also have to stay later beyond her scheduled time to service all of the clinics patients.   Plaintiff was directed that she was not allowed to work any overtime, but the demands of her position required her to work approximately 5-8 hours per week off-the-clock.   Fearing her job would be in jeopardy if she reported her overtime hours after being reprimanded the first time, Plaintiff opted to just continue working off-the-clock to ensure patient care was complete and all of the necessary clerical and administrative tasks for the clinic were complete each day.

40.     Plaintiff informed her manager and directors that she did not have enough time and had to work late at times, but their only response was to "make it all work in the "thirty-nine hours you are allotted each week." In retaliation for such complaints regarding her not being paid for all hours worked as well as for requesting reasonable accommodations under the ADA/time-off under the FMLA, Plaintiff was terminated.

11

41.     There was a Department of Labor complaint filed on behalf of employees who had to attend mandatory "huddle meetings" each week for 15-minutes which were not paid and occurred during everyone's unpaid "lunch break."

42.     Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## FMLA-INTERFERENCE WITH RIGHT TO TAKE LEAVE

43.     Plaintiff re-alleges and incorporates all allegations contained within Paragraphs 1 through 42, above, as if fully set forth herein.

44.     At all times relevant hereto, Defendants interfered with Plaintiff's right to take leave from work under the FMLA.

45.     At all times relevant hereto, Defendants' interference with Plaintiff's right to take leave from work violated FMLA.

46.     In May of 2019, Plaintiff required FMLA protected leave to care for a serious health condition.

47.     Plaintiff gave Defendants appropriate notice of her need to be absent from work.

48.     Defendants approved Plaintiff's FMLA leave.

49.   On July 16, 2019, Defendants interfered with the exercise of Plaintiff's right to FMLA leave because Defendants pressured Plaintiff to return to work before the end of Plaintiff's agreed FMLA-approved leave (August, 2019) and then terminated Plaintiff that same day while Plaintiff was still on FMLA leave.

50.   As a result of Defendant's intentional, willful and unlawful acts by interfering with Plaintiff's rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonably attorneys' fees and costs.

51.   Because Defendant cannot show that its violation of the FMLA was in good faith, Plaintiff is entitled to liquidated damages.

52.   Defendant's violation of the FMLA was willful, as Defendant engaged in the above-described actions while knowing that same were impermissible under the FMLA.

WHEREFORE Plaintiff, Beverly Yeshion Roetter, demands judgment against Defendant for back pay, reinstatement and in the alternative, front pay in the event reinstatement is not practical, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, injunctive relief and reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

13

## COUNT II
## FMLA – RETALIATION

53.     Plaintiff re-alleges and incorporates all allegations contained within Paragraphs 1through 42, above, as if fully set forth herein.

54.     At all times relevant hereto, Defendant retaliated against Plaintiff by terminating her employment because she exercised her right to take leave from work that was protected under the FMLA.

55.     At all times relevant hereto, Defendant retaliated against Plaintiff because she took FMLA protected leave.

56.     At all times relevant hereto, Defendant retaliated against Plaintiff in violation of the FMLA by terminating her employment for seeking time off under the FMLA.

57.     Prior to the end of Plaintiff's approved FMLA, Plaintiff's employment was terminated by Defendant on July 16, 2019.   Thus, the contemporaneous temporal proximity between Plaintiff's exercise of her FMLA rights and her termination establish a sufficient causal connection between her protected FMLA leave and her termination.

58.     At all times relevant hereto, Defendant acted with the intent to retaliate against Plaintiff, because Plaintiff exercised her right to leave pursuant to the FMLA.

14

59.     As a result of Defendant's intentional, willful and unlawful acts of retaliating against Plaintiff for exercising her rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

60.     Because Defendant cannot prove that their violation of the FMLA was in good faith, Plaintiff is entitled to liquidated damages.

61.     Defendant's violation of the FMLA was willful, as Defendant engaged in the above-described actions while knowing that same were impermissible under the FMLA.

WHEREFORE Plaintiff, Beverly Yeshion Roetter, demands judgment against Defendants for back pay, reinstatement and, in the alternative, front pay in the event reinstatement is not practical, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, injunctive relief and reasonable attorneys' fees and costs, and any and all further relief that this court determines to be just and appropriate.

## COUNT III
## RELIGION DISCRIMINATION

62.     Paragraphs 1 through 42 are re-alleged and incorporated herein by reference.

63.     This is an action against Defendant for religion discrimination brought under 42 U.S.C. §2000e et seq.

15

64.    Plaintiff has been the victim of discrimination on the basis of her religion.  During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated non-Jewish employees.

65.    Defendant is liable for the differential treatment and its refusal to accommodate the Plaintiff which adversely affected the terms and conditions of Plaintiff's employment with Defendant.

66.    Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

67.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were religion based and in violation of the laws set forth herein.

68.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein led, at least in part, to Plaintiff's termination.

69.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon Plaintiff's religion under the laws cited herein.

16

70.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive relief and punitive damages.

## COUNT IV
## RETALIATION

71.     Paragraphs 1 through 42 are re-alleged incorporated herein by reference.

72.     This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her under 42 U.S.C. § 2000e et seq.

73.     Defendant is an employer as that term is used under the applicable statutes referenced above.

74.     The foregoing unlawful actions by Defendant were purposeful.

75.     Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

76.    The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

77.    Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

78.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT V
## DISABILITY DISCRIMINATION

79.    Paragraphs 1 through 42 above are re-alleged and incorporated herein.

80.    This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/ or record of impairment, brought under 42 U.S.C. §12101, et seq.

81.    Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's

18

employment by Defendant, Plaintiff was treated differently than similarly situated employees who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

82.    Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff, which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

83.    Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

84.    In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

85.    The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff's uncontrolled diabetes.

86.    Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

19

87.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue in to the future. Plaintiff is entitled to equitable/injunctive relief and to punitive damages under this count.

## COUNT VI
## ADA RETALIATION

88.    Paragraphs 1 through 42 above are re-alleged and incorporated.

89.    Defendant is an employer as that term is used under the applicable statutes referenced above.

90.    This count sets forth a claim for unlawful retaliation under the Americans with Disabilities Act.

91.    Defendant retaliated against Plaintiff because Plaintiff had a disability under the ADA and/or was perceived to have a disability under the ADA and requested a reasonable accommodation for same.

92.    Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights under 42 U.S.C. §12101, et seq. as a result of

Plaintiff exercising or enjoying Plaintiff's rights granted under 42 U.S.C. §12101, et seq. or encouraging another to do so.

93.    The foregoing unlawful actions by Defendant were purposeful.

94.    Because of Plaintiff's reporting or association with another who reported Defendant's unlawful behavior, Plaintiff was the victim of retaliation, as relayed in part above, including without limitation Plaintiff's termination.

95.    Plaintiff became a member of a protected class after reporting Defendant's unlawful employment practices or association with another who reported Defendant's unlawful employment practices, and Plaintiff was a victim of retaliation thereafter. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment actions taken thereafter.

96.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue in to the future. Plaintiff is entitled to equitable/injunctive relief and to punitive damages under this count.

## COUNT VII
## FCRA HANDICAP DISCRIMINATION

97.     Paragraphs 1 through 42 are realleged and incorporated herein by reference.

98.     This is an action against Defendant for disability/handicap discrimination brought under Chapter 760, Florida Statutes.

99.     Plaintiff has been the victim of discrimination on the basis of her disability or perceived disability.  During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated non-handicapped/perceived-as-disabled employees.

100.    Defendant is liable for the differential treatment and its refusal to accommodate   Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant.  Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

101.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/handicap/perceived-disability based and in violation of the laws set forth herein.

102.   The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination.

103.   Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon handicap, disability or perceived disability/handicap or her record of having an impairment under the laws enumerated herein.

104.   As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

**COUNT VIII**
**FCRA RETALIATION – Chapter 760**

105.   Paragraphs 1 through 42 are realleged and incorporated herein by reference.

106.   Defendant is an employer as that term is used under the applicable statutes referenced above.

107.  The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices/discrimination based on her handicap and religion which adversely affected Plaintiff under Chapter 760, Florida Statutes, and other statutory provisions cited herein.

108.  The foregoing unlawful actions by Defendant were purposeful.

109.  Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and was the victim of retaliation thereafter, as related in part above.

110.  Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices/discrimination based on her handicap/religion and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

111.  As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to punitive damages and to injunctive relief.

24

## COUNT IX
## FCRA RELIGIOUS DISCRIMINATION

112.   Paragraphs 1-42 are hereby re-alleged and incorporated herein.

113.   This action is brought under Chapter 760, Florida Statutes, for discrimination based on religion.

114.   Plaintiff has been the victim of discrimination on the basis of Plaintiff s religion in that Plaintiff was treated differently than similarly situated employees of Defendant do not share Plaintiffs religious beliefs and preferences and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff s religion.

115.   Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

116. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in the same.

117.   Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

118.   In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a religion-based nature and in violation of the laws set forth herein.

119.   The discrimination complained of herein affected a term, condition, or privilege of Plaintiffs continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiffs termination on contrived allegations.

120.   Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon religion in violation of Chapter 760, Florida Statutes.

121.   As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other fringe benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief and punitive damages.

## COUNT X
## VIOLATION OF 29 U.S.C. §207 OVERTIME COMPENSATION

122.   Paragraphs 1-42 are realleged and incorporated herein by reference.

123.   From on or around June 2017, until July 16, 2019, Plaintiff routinely worked in excess of forty (40) hours per week for which Plaintiff was not compensated at the statutory rate of one and one-half times his regular rate of pay for each of his overtime hours worked.

124.   Plaintiff was and is entitled to be paid at the statutory rate of one and one-half times her regular rate of pay for each hour worked in excess of forty (40) hours per work week.

125.   Defendant had knowledge of the overtime hours worked by Plaintiff.

126.   Defendants' actions were willful and/or showed reckless disregard for the provisions of the FLSA, as evidenced by its failure to compensate Plaintiff at the statutory rate of one and one-half times his regular rate of pay for the hours worked in excess of forty (40) hours per weeks when it knew, or should have known, such was, and is due.

127.   Defendant's failed to properly disclose or apprise Plaintiff of her rights under the FLSA.

128.   Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff suffered and continues to suffer damages and lost compensation for time worked over forty (40) hours per week, plus liquidated damages.

129.   Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

**WHEREFORE**, Plaintiff, BEVERLY YESHION ROETTER, demands judgment against Defendants for the payment of all unpaid overtime wages for which Defendants did not properly compensate her, liquidated damages, reasonable attorneys' fees and costs incurred in this action, and any and all further relief that this Court determines to be just and appropriate.

## COUNT XI
## <u>RETALIATION IN VIOLATION OF §215(a)(3)</u>

130.   Paragraphs 1-42 are realleged and incorporated herein by reference.

131.   Plaintiff complained regarding her overtime hours worked and Defendant's policy that fails to pay proper overtime compensation as well as Plaintiff having to spend time working off the clock.

132.   Shortly after Plaintiff's complaints, Plaintiff's work environment deteriorated.

133.   Despite no history of disciplinary action, write-ups, and/or poor performance reviews, Plaintiff was terminated in retaliation for her complaints related to unpaid overtime/working off the clock.

134.   Defendant retaliated against Plaintiff because she complained about Defendants' unlawful pay practices by writing her up and eventually terminating her.

135.   Defendant's retaliatory conduct towards Plaintiff was willful as Defendants knew or should have known that its actions were in violations of 29 U.S.C. §215(a)(3).

136.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been damaged.

137.   Plaintiff is entitled to an award of attorney's fees and costs pursuant to 29 U.S.C. §216(b).

**WHEREFORE**, Plaintiff, BEVERLY YESHION ROETTER, seeks a judgment for Plaintiff and against Defendants for violation of 29 U.S.C. §215(a)(3); as well as back pay, an equal amount in liquidated damages, front pay, compensatory damages, punitive damages, reasonable costs and attorneys' fees and all other equitable relief this Court deems just.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the circumstances.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated: December 14, 2020

<div style="margin-left:40%">

Respectfully submitted,

**/s/ Gregory R. Schmitz**
GREGORY R. SCHMITZ, ESQ.
Florida Bar No.:  0094694
Morgan & Morgan, P.A
20 North Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407) 204-2170
Facsimile:   (407) 563-9986
E-mail: gschmitz@forthepeople.com
        mbarreiro@forthepeople.com
        egeorge@forthepeople.com
        *Attorney for Plaintiff*

</div>